UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANNA KIHAGI, et al.,<br><br>    Plaintiffs,<br><br>v.<br><br>CITY OF SAN FRANCISCO, CALIFORNIA, et al.,<br><br>    Defendants. | Case No.  15-cv-01168-KAW<br><br>**ORDER GRANTING MOTION TO STAY**<br><br>Re: Dkt. No. 19 |

Defendant City and County of San Francisco moves to stay the above-captioned case. Plaintiffs oppose the motion. The Court deems the matter suitable for disposition without hearing pursuant to Civil Local Rule 7-1(b) and VACATES the hearing currently set for January 21, 2016. Having considered the papers filed by the parties and the relevant legal authority, the Court GRANTS the motion, for the reasons set forth below.

## I. BACKGROUND

### A. Factual background

Anna Kihagi, an "African-American immigrant," is the managing member of Xelan Prop 1, LLC, Renka Prop, LLC, and Zoriall LLC (collectively, "Plaintiffs"),[1] three companies that own rental properties in San Francisco. (1st Am. Compl. ("FAC") ¶¶ 7-10, 32, Dkt. No. 18.) Kihagi alleges that only some of the properties are subject to the City's rent control ordinance. (*Id.* ¶ 33.)

In 2014, Kihagi learned that some of her tenants were subletting their rent-controlled units at market rates without her consent and in violation of their lease agreements. (*Id.* ¶¶ 35-38.) When Kihagi evicted the tenants who were illegally subletting their apartments, they complained

---

[1] For ease of reference, the Court will refer to all Plaintiffs as "Kihagi."

to the City. (*Id.* ¶¶ 38-39.) This prompted a "full-fledged attack on Kihagi vis-à-vis the City's handling of applications for construction and remodelling [*sic*] permits and virtually anything else that required City approval even and especially concerning matters having nothing to do with the tenant disputes." (*Id.* ¶ 40.) She claims the City has discriminated against her based on her race, and that it has selectively enforced the laws in an arbitrary and capricious manner. (*Id.* ¶¶ 73, 78.)

Kihagi offers several examples of the City's purported selective enforcement.[2] She alleges that when she applied for a permit to demolish an illegal unit, the City revised its original position that the unit was illegal and worked with the tenant to revoke the valid demolition permit. (*Id.* ¶ 42.) When she "applied for a permit . . . to demolish a termite damaged storage room and replace [*sic*] with pressure treated wood," the City, upon learning that Kihagi was the applicant, "issued a permit on the condition that it be completed within an unreasonably short period of time." (*Id.*)

When "Kihagi applied for a permit for one of the units at 1137 Guerrero Street to build windows in the rear of the building, not visible to the street," the City allegedly denied application based on a letter from the City Attorney's Office, in which it demanded permission to inspect buildings located at 3927 18th Street, 1135-1139 Guerrero Street, 69-85 Hill Street, 195 Eureka Street, and 1000-1022 Filbert Street in San Francisco. (*Id.* ¶ 45.) Kihagi describes the letter "as a pre-text to unreasonably deny [her] right to seek the issuance of permits for the Guerrero and Eureka properties."[3] (*Id.* ¶ 47.)

On March 3, 2015, Kihagi denied the City permission to enter her properties. (*Id.* ¶ 49.) The next day, "eight City employees and law enforcement personnel entered the common area of Kihagi's buildings." (*Id.* ¶ 50.) At some point, a deputy city attorney reassured Kihagi that "no other property which she owned or managed would be improperly searched because the City did not have consent and that the City was done with their investigation for the day." (*Id.* ¶ 53.) Twenty minutes later, the same City employees, accompanied by a different police officer,

---

[2] The Court does not describe every example here.

[3] The allegations in the operative complaint do not make clear which permit application concerns the Eureka property.

2

illegally searched another one of Kihagi's properties, including common areas and various units. (*Id.* ¶¶ 54-56.)

According to Kihagi:

> Security were able to locate a document in plain view in the vehicles of a City inspector written and signed by Deputy City Attorney Weatherford which accused Kihagi of having "a practice of evicting long-standing, rent-controlled tenants, illegally housing day laborers in unfinished apartments, performing construction work without permits, or beyond the scope of permits, and re-renting the units to new tenants at market rents."

(*Id.* ¶ 58.) Kihagi asserts that she is the only person whose properties have been raided by a task force, despite their being in good condition. (*Id.* ¶ 65.) She also alleges that when she applies for a permit, "the various planning department and building divisions see a message on their screen which states, 'DO NOT issue permits per DA Michael Weis and DBI Sr. Inspector Patrick Orieden.'" (*Id.* ¶ 72.) Kihagi claims that she "is the only person to receive such an automatic block on the issuance of permits." (*Id.* ¶ 73.)

### B.  Procedural background

Based on the City's alleged conduct, Kihagi commenced this action on March 12, 2015. (Compl., Dkt. No. 1.) On stipulation of the parties, Kihagi filed a first amended complaint on May 18, 2015. (FAC; April 16, 2015 Stip., Dkt. No. 14; April 30, 2015 Stip., Dkt. No. 15.) Kihagi alleges that the City, Deputy City Attorneys Victoria L. Weatherford and Michael Weiss, and Housing Inspectors Marico Hernandez and Tony Pelea denied her equal protection, violated her due process rights, retaliated against her for exercising her First Amendment right to petition government, and conspired to do so. (FAC ¶¶ 11-27, 77-80, 81-83, 84-88, 89-93.) She prays for an award of damages, costs of suit, and attorney's fees. (FAC ¶¶ 1-4.)

On June 4, 2015, the City filed a lawsuit against Kihagi in the Superior Court for the County of San Francisco. (Req. for Judicial Notice ("RJN"), Ex. 1, State Court Complaint, Dkt. No. 21.) In the state court action, the City alleges that Kihagi has been "rampantly violating the letter and spirit of the Rent Ordinance, and in particular, Section 37.10B, by harassing, retaliating, and intimidating their tenants into surrendering their rent-controlled units." (*Id.* ¶ 6.) According to the City, once Kihagi's tactics succeed, she quickly renovates units, often without necessary

3

permits, inspections, or licensed contractors, and relets them at substantially increased rents. (*Id.* ¶ 8.)

The City asserts four claims in its state court complaint. The first cause of action is for violation of San Francisco Administrative Code section 37.10B et seq. (*Id.* ¶¶ 128-135.) The second cause of action is for violation of California Health and Safety Code sections 17920-17980.9. (*Id.* ¶¶ 136-147.) The third cause of action is for general public nuisance under California Civil Code sections 3479 and 3480. (*Id.* ¶¶ 148-154.) The fourth cause of action is for unfair and unlawful business practices in violation of California Business and Professions Code sections 17200-17210. (*Id.* ¶¶ 155-165.) The City seeks a variety of declaratory and injunctive relief, payment of statutory fines, civil penalties, and restitution, authorization to place a lien on Kihagi's property, reimbursement of costs of enforcement, and payment of reasonable attorney's fees and costs. (*Id.* ¶¶ 1-16.)

On June 30, 2015, the City filed a motion to stay this federal case, along with a request for judicial notice.[4] (Defs.' Mot., Dkt. No. 19; RJN.) The Court approved the parties' stipulations to modify the briefing schedule on the motion. (Stip. & Order, Dkt. No. 26; Stip. & Order, Dkt. No. 28.) In accordance with the revised briefing schedule, Kihagi filed her opposition on August 17, 2015, and the City filed its reply on August 24, 2015. (Pls.' Opp'n, Dkt. No. 29; Defs.' Reply, Dkt. No. 30.) Kihagi has not filed an opposition to the City's request for judicial notice.

## II.     LEGAL STANDARD

### A.     Request for judicial notice

A district court may take judicial notice of facts not subject to reasonable dispute that are "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b); *United States v. Bernal–Obeso*, 989 F.2d 331, 333 (9th Cir. 1993). A court may, therefore, take judicial notice of matters of public record.

---

[4] The motion was originally noticed for hearing on August 6, 2015. Because Plaintiffs had not filed a certificate of service showing that the individual employee defendants had been served, the Court continued the hearing. After the Court issued an order to show cause, Plaintiffs filed certificates of service, though they did not file a written response as ordered by the Court. Dkt. Nos. 38-40.

*United States v. Wilson*, 631 F.2d 118, 119 (9th Cir. 1980).

### B. Motion to stay

Subject to exceptions not claimed here, *Younger* abstention is appropriate where (1) there are ongoing state judicial proceedings, (2) those proceedings implicate important state interests, and (3) there is an adequate opportunity in the state proceedings to raise constitutional challenges. *Middlesex Cty. Ethics Comm'n v. Garden State Bar Ass'n*, 457 U.S. 423, 432 (1982). Once these three threshold elements are met, a court may properly abstain "if the court's action would enjoin, or have the practical effect of enjoining, ongoing state court proceedings." *AmerisourceBergen Corp. v. Roden*, 495 F.3d 1143, 1149 (9th Cir. 2007) (citation and footnote omitted); *see Gilbertson v. Albright*, 381 F.3d 965, 968 (9th Cir. 2004) ("*Younger* principles apply to actions at law as well as for injunctive or declaratory relief because a determination that the federal plaintiff's constitutional rights have been violated would have the same practical effect as a declaration or injunction on pending state proceedings.").

### III. DISCUSSION

### A. Request for judicial notice

The City asks that the Court take judicial notice of the docket and complaint in the parallel state court case. (*See* RJN, Exs. 1 & 2.) Kihagi does not oppose the request. The Court finds that the documents are true and correct copies of documents filed in state court and grants the City's request for judicial notice. *See* Fed. R. Evid. 201(b)(2); *Wilson*, 631 F.2d at 119 ("[A] court may take judicial notice of its own records in other cases, as well as the records of an inferior court in other cases.").

### B. Motion to stay

The City moves for a stay on the grounds that all elements for *Younger* abstention are met in this case. (Def.'s Br. in Support of Mot. to Stay ("Def.'s Br."), Dkt. No. 20.) It argues that the state action, though it was filed after Kihagi commenced this federal case, constitutes ongoing state judicial proceedings. (*Id.* at 2.) The City asserts that the state has a strong interest in enforcing the rent ordinance, protecting tenants' rights, and ensuring fair business practices, all of which are at issue in the ongoing state court case. (*Id.* at 2-3.) The City also argues that Kihagi

can raise her federal claims in state court, either as counter-claims against the City or as defenses to the City's allegations. (*Id.* at 4.) The City further contends that a ruling by this Court would effectively enjoin the state court proceedings. (*Id.*)

In opposition, Kihagi argues that *Younger* abstention is an exception to the general rule that federal courts must exercise jurisdiction and decide cases brought before them. (Pls.' Opp'n 3.) She urges the Court to adhere to the general rule in this case, as *Younger* abstention is not appropriate where "there exists only a prospect that the federal court decision may, through claim or issue preclusion, influence the result in state court." (*Id.*) Plaintiff argues that this action would not interfere with the state court lawsuit because different issues are presented in each. (*Id.* at 4.)

Plaintiff's position is unavailing. The threshold elements for *Younger* abstention are met in this case. The first element for *Younger* abstention—ongoing state judicial proceedings—is satisfied because the city's civil enforcement action is currently pending in state court. (*See* RJN, Exs. 1 & 2.) While the City did not file its state court complaint until June 4, 2015, after Plaintiff filed her action in this Court on March 12, 2015, the state court action was nonetheless commenced before any proceedings of substance took place in the federal case. *See M&A Gabaee v. The Cmty. Redev. Agency of the City of Los Angeles*, 419 F.3d 1036, 1042 (9th Cir. 2005). In fact, Plaintiff filed the operative complaint just weeks before the City commenced the state court case. The second element is also met because the issues raised in the state court litigation implicate important state interests. *See, e.g.*, *Mission Oaks Mobile Home Park v. City of Hollister*, 989 F.2d 359, 361 (9th Cir. 1993) (proceedings related to rental rate ordinances implicate important state interests) *overruled on other grounds by Green v. City of Tucson*, 255 F.3d 1086, 1093 (9th Cir. 2001). The third element is also met, as Kihagi is free to raise her constitutional claims in state court.

Having found that the threshold requirements for *Younger* abstention are met, the Court also finds that this proceeding would have the practical effect of enjoining the state code enforcement action. Where, as here, "a person is the target of an ongoing state action involving important state interests, the state defendant cannot interfere with the pending state action by maintaining a parallel federal action involving claims that could have been raised in the state

case." *Carroll v. City of Mount Clemens*, 139 F.3d 1072, 1074-75 (6th Cir. 1998); *see also Gilbertson*, 381 F.3d at 980 n. 15 (citing *Carroll*, 139 F.3d at 1075-76). In the event the state defendant commences such an action, "*Younger* abstention requires the federal court to defer to the state proceeding." *Carroll*, 139 F.3d at 1074-75. Kihagi has commenced such an action here. She is the target of an ongoing state code enforcement proceeding, and this federal case interferes with that proceeding to the extent she brings claims that not only may be brought in state court but that generally concern the same subject matter, i.e., the condition of her properties, her compliance with applicable laws, and whether the City's enforcement actions were appropriate. Under these circumstances, the progression of this action must yield to the state court proceedings. *See Gilbertson*, 381 F.3d at 965 ("We conclude that Younger principles apply to actions at law as well as for injunctive or declaratory relief because a determination that the federal plaintiff's constitutional rights have been violated would have the same practical effect as a declaration or injunction on pending state proceedings.").

## IV.   CONCLUSION

For the reasons set forth above, the City's motion to stay is GRANTED. The currently scheduled case management conference is CONTINUED to June 28, 2016. The parties shall file a joint case management conference statement seven days before. Depending on the status of the state court proceedings at that time, the parties may stipulate to continuing the case management conference in lieu of filing a joint case management conference statement. If the parties elect to do so, they must update the Court on the status of the state court proceedings and propose a continued case management conference date.

IT IS SO ORDERED.

Dated: 01/15/16

_____
KANDIS A. WESTMORE
United States Magistrate Judge