UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANNA KIHAGI, et al.,<br><br>   Plaintiffs,<br><br> v.<br><br>CITY OF SAN FRANCISCO, CALIFORNIA, et al.,<br><br>   Defendants. | Case No. 15-cv-01168-KAW<br><br>**ORDER DENYING MOTION TO LIFT STAY**<br><br>Re: Dkt. No. 46 |

On January 15, 2016, this Court granted Defendant City and County of San Francisco's motion to stay the above-captioned case, applying *Younger* abstention. (Ord. Granting Mot. to Stay ("Ord."), Dkt. No. 43 at 7.) Plaintiffs now move to lift the stay. (Pls.' Mot., Dkt. No. 46.) The Court deems the matter suitable for disposition without hearing pursuant to Civil Local Rule 7-1(b) and VACATES the hearing currently set for October 6, 2016. Having considered the papers filed by the parties and the relevant legal authority, the Court DENIES the motion, for the reasons set forth below.

## I. BACKGROUND

### A. Factual background

Anne Kihagi is an "African-American immigrant" who is the managing member of Xelan Prop 1, LLC, Renka Prop, LLC, and Zoriall LLC (collectively, "Kihagi"), three companies that own rental properties in San Francisco. (1st Am. Compl. ("FAC") ¶¶ 7-10, 32, Dkt. No. 18.) Some of these properties are subject to the City's rent control ordinance. (*Id.* ¶ 33.)

In 2014, Kihagi learned that some of her tenants were subletting their rent-controlled units at market rates. (*Id.* ¶¶ 35-38.) When Kihagi evicted these tenants, they allegedly complained to the City. (*Id.* ¶¶ 38-39.) This prompted a "full-fledged attack on Kihagi vis-à-vis the City's

handling of applications for construction and remodelling [*sic*] permits and virtually anything else that required City approval even and especially concerning matters having nothing to do with tenant disputes." (*Id.* ¶ 40.) She claims that the City targeted her based on her race and the "City's bureaucratic hostility towards landlords' right to evict tenants who are breaking their leasing contracts." (*Id.* ¶ 73.) This alleged discrimination has resulted in continual harassment by the City and excessive penalties. (*Id.* ¶¶ 74, 75.)

Kihagi offers several examples of the City's purported enforcement.[1] For example, she alleges that with respect to the Filbert property, in February 2015, an electrical inspector filed a Code Enforcement Violation on work he claimed was done to the property even though he knew the work was done with valid permits. (*Id.* ¶ 68.) The inspector then posted notices on the Filbert property, notifying tenants of the purported violation. (*Id.*) The approved permits were also removed from the City's electronic system, and the visitation was only retracted when Kihagi presented them with hard copies of the approved permits. (*Id.* ¶¶ 69-70.) Kihagi asserts that similar instances occurred with plumbing records. (*Id.* ¶ 71.)

### B. Procedural background

Based on the City's alleged conduct, Kihagi commenced this action on March 12, 2015. (Compl., Dkt. No. 1.) On stipulation of the parties, Kihagi filed a first amended complaint on May 18, 2015. (FAC; April 16, 2015 Stip., Dkt. No. 14; April 30, 2015 Stip., Dkt. No. 15.) Kihagi alleges that the City, Deputy City Attorneys Victoria L. Weatherford and Michael Weiss, and Housing Inspectors Marico Hernandez and Tony Pelea denied her equal protection, violated her due process rights, retaliated against her for exercising her First Amendment right to petition government, and conspired to do so. (FAC ¶¶ 11-27, 77-80, 81-83, 84-88, 89-93.) She seeks an award of damages, costs of suit, and attorney's fees. (FAC at 21.)

On June 4, 2015, the City filed a lawsuit against Kihagi in the Superior Court for the County of San Francisco. (Mot. to Stay Req. for Judicial Notice, Exh. 1, State Court Complaint, Dkt. No. 21.) In the state court action, the City alleges that Kihagi has been "rampantly violating

---

[1] The Court does not describe every example here. Other examples were also described in the Court's prior order granting Defendants' motion to stay. (Ord. at 2-3.)

the letter and spirit of the Rent Ordinance, and in particular, Section 37.10B, by harassing, retaliating, and intimidating their tenants into surrendering their rent-controlled units." (*Id.* ¶ 6.) The City further alleges that once Kihagi's tactics succeed, she quickly renovates the units, often without necessary permits, inspections, or licensed contractors, and relets them at substantially increased rents." (*Id.* ¶ 8.)

The City asserts four claims in its state court complaint. The first cause of action is for violation of San Francisco Administrative Code section 37.10B et seq. (*Id.* ¶¶ 128-135.) The second cause of action is for violation of California Health and Safety Code sections 17920-17980.9. (*Id.* ¶¶ 136-147.) The third cause of action is for general public nuisance under California Civil Code sections 3479 and 3480. (*Id.* ¶¶ 148-154.) The fourth cause of action is for unfair and unlawful business practices in violation of California Business and Professions Code sections 17200-17210. (*Id.* ¶¶ 155-165.) The City seeks a variety of declaratory and injunctive relief, payment of statutory fines, civil penalties, and restitution, authorization to place a lien on Kihagi's property, reimbursement of costs of enforcement, and payment of reasonable attorney's fees and costs. (*Id.* ¶¶ 1-16.)

On June 30, 2015, the City filed a motion to stay this federal case. (Dkt. No. 19.) On January 15, 2016, the Court granted the City's motion on the papers and stayed the case, finding that the threshold requirements for *Younger* abstention were met and that the instant "proceeding would have the practical effect of enjoining the state code enforcement action." (Ord. at 6.)

On July 15, 2016, Kihagi filed the instant motion to lift the Court's stay, on the ground that the City has "initiated, pursued, and escalated its bad faith code enforcement prosecution and patently invidious discrimination . . . . ." (Pls.' Mot. at 2.) As examples, Kihagi claims that the City presented false declarations to obtain inspection warrants, propounded approximately 1,600 discovery questions, sought evidentiary and monetary sanctions on the discovery, sought disclosure of personal records, and "tweeted" about the case. (Pls.' Mot. at 2-3.) In support of her claims, Kihagi filed a declaration by Julie N. Nong, attaching Department of Building Inspection records and court records. (Nong Dec., Dkt. No. 46-2.) The City filed its opposition on August 2, 2015, along with a request for judicial notice. (Defs.' Opp'n, Dkt. No. 50; Request for Judicial

3

Notice ("RJN"), Dkt. No. 51.) Kihagi filed her reply on August 9, 2015, along with a declaration by Dorothy P. Mou, attaching court records. (Pls.' Reply, Dkt. No. 52; Mou Dec., Dkt. No. 52-1.) Kihagi did not file an opposition to the City's request for judicial notice.

## II.  LEGAL STANDARD

### A. Request for judicial notice

A district court may take judicial notice of facts not subject to reasonable dispute that are "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b); *United States v. Bernal-Obeso*, 989 F.2d 331, 333 (9th Cir. 1993). A court may, therefore, take judicial notice of matters of public record. *United States v. Wilson*, 631 F.2d 118, 119 (9th Cir. 1980).

### B. Motion to lift stay

*Younger* abstention generally "applies when there is a pending state proceeding that implicates important state interests and provides the federal plaintiff with an opportunity to raise federal claims." *Baffert v. Cal. Horse Racing Bd.*, 332 F.3d 613, 617 (9th Cir. 2003). However, "an exception to abstention applies if the state proceedings demonstrate bad faith, harassment, or some other extraordinary circumstances that would make abstention inappropriate." *Id.* (internal quotation omitted); *see also San Jose Silicon Valley Chamber of Commerce Political Action Comm.*, 546 F.3d 1087, 1092 (internal quotation omitted). Thus, if the "state proceedings are conducted in bad faith or to harass the litigant . . . the district court may exercise jurisdiction even when the criteria for *Younger* abstention are met." *Baffert*, 332 F.3d at 621. In the context of *Younger* abstention, "bad faith generally means that a prosecution has been brought without a reasonable expectation of obtaining a valid conviction." *Id.* (internal quotation omitted).

## III. DISCUSSION

### A. Request for judicial notice

The City asks that the Court take judicial notice of: (1) the Superior Court's order granting in part the City's motion for evidentiary and monetary sanctions against Kihagi, (2) the Superior Court's order granting the City's motion to compel further responses to requests for admission and form interrogatories, (3) the Superior Court's order granting the City's motion to compel further

4

responses to special interrogatories and requests for production, and (4) an order for the selection of a referee. Kihagi does not oppose the request. The Court finds that the documents are true and correct copies of documents filed in state court and grants the City's request for judicial notice. *See* Fed. R. Evid. 201(b)(2); *Wilson*, 631 F.2d at 119 ("[A] court may take judicial notice of its own records in other cases, as well as the records of an inferior court in other cases.").

### B.     Motion to lift stay

Kihagi argues that the City's litigation tactics are evidence of bad faith and harassment, which warrants lifting the stay in the instant case. Again, the Ninth Circuit has found that "bad faith generally means that a prosecution has been brought without a reasonable expectation of obtaining a valid conviction." *Baffert*, 332 F.3d at 621. Some courts have suggested that this is not the only way of proving bad faith. For example, applying a more expansive view of bad faith, the Tenth Circuit has found that the courts should also consider whether a prosecution is "motivated by the defendant's suspect class or in retaliation for the defendant's exercise of constitutional rights," and whether the prosecution "was conducted in such a way as to constitute harassment and an abuse of prosecutorial discretion, typically through the unjustified and oppressive use of multiple prosecutions." *Phelps v. Hamilton*, 59 F.3d 1058, 1065 (9th Cir. 1995).

Here, Kihagi does not argue that the City brought the case without a reasonable expectation of obtaining a valid conviction. Instead, she argues that the state proceedings were initiated in retaliation for exercising her right to evict tenants and motivated by "her status as an American female immigrant and real estate entrepreneur of African descent." (Plfs.' Mot. at 6.) The documents relied upon by Kihagi, however, do not support her claims. For example, Kihagi points to the "false declarations" presented by the City to obtain inspection warrants, but provides no evidence that the declarations are false. (Nong Dec., Exh. 13.) Kihagi also challenges the discovery propounded by the City. (Plfs.' Mot. at 3.) But while this discovery is extensive, she has not demonstrated that it was inappropriate. Instead, the Superior Court clearly found merit to the discovery because it not only granted several of the City's motions for sanctions against Kihagi, finding that Kihagi had waived all objections to Plaintiffs' Requests for Admissions and Form Interrogatories, but also imposed monetary sanctions in the amount of $16,000.00. (RJN,

1   Exh. B (imposing evidentiary sanctions and $8,000 in monetary sanctions), C (same).)[2]

2   In her reply brief, Kihagi relies on three documents. (Pls.' Reply at 2.) First, she relies on
3   the Superior Court's order denying the City's motion for a preliminary injunction, in which the
4   Superior Court found that the preliminary injunction was unwarranted because the conduct alleged
5   was historical, not ongoing, and because the terms of the preliminary injunction were
6   "unprecedented in scope and restrictiveness." (Nong Dec., Exh. 20.)[3] However, the Superior
7   Court did not find that the motion was brought in bad faith, but simply concluded that a trial was
8   the appropriate forum for weighing the evidence and testimony. (*Id.*) A single denial of a
9   preliminary injunction is not alone grounds for finding bad faith or harassment. Second, Kihagi
10  argues that "to circumvent this denial," the City then filed an ex parte application for an inspection
11  warrant, to be conducted by seven city officials at four buildings. (Pls.' Reply at 2.) The Superior
12  Court granted the motion but limited the inspection to one inspector. (Mou Dec., Exh. B.) Kihagi
13  contends that the Superior Court's limitation clearly shows "this excessive request for ex parte
14  relief was in patent disregard of due process." (Pls.' Reply at 3.) There is no evidence that the
15  inspection warrant was sought in order to "circumvent" the denial of the preliminary injunction, or
16  that the Superior Court found any due process problem. Instead, the Superior Court found that
17  there *was* probable cause for the inspection warrant, even if it limited the number of inspectors
18  (although not the scope of the inspection itself). (Mou Dec., Exh. B.) Finally, Kihagi points to the
19  City's July 27, 2016 Inspection Demand, arguing that this relief was already twice denied. To the
20  contrary, while the proposed preliminary injunction sought significantly more relief than just an
21  inspection,[4] the Superior Court did allow an inspection when it granted the City's ex parte

---

[2] The Court observes that on August 23, 2016, the discovery referee granted in part the City's motion to compel responses to special interrogatories and requests for production, finding that "[t]he vast majority of the discovery requests should have been answered," and further sanctioning Kihagi $3,500. *City & Cnty. of SF v. Kihagi*, Case No. CGC-15-546152, Discovery Order No. 8. In this order, the discovery referee also permitted discovery of Kihagi's financial and personal information, finding it relevant to the City's claims. *Id.*

[3] Although Kihagi does not ask the Court to take judicial notice of the exhibits to the Nong or Mou Declaration, the Court will take judicial notice of the relevant court documents.

[4] For example, the preliminary injunction would outlaw all use of security cameras on Kihagi's properties, require tenant services to be maintained exactly as it, and require Kihagi to get court

6

application for an inspection warrant, only limiting the number of inspectors involved. Again, this is not evidence of bad faith or harassment.

The Court finds that Kihagi has not produced evidence of bad faith or harassment. "Evidence of bad-faith harassment must be more than multiple prosecutions, must be more than conclusory statements about motive, must be more than a weak claim of selective prosecution, and must be more than the prosecution of close cases." *Phelps v. Hamilton*, 840 F. Supp. 1442, 1453 (D. Kan. 1993) (citations omitted). While Kihagi makes numerous conclusory statements that the City is acting with "animus" or "vindictiveness . . . rooted in [Kihagi's] protected status as an American female immigrant and real estate entrepreneur of African descent," Kihagi does not support these claims with evidence. (Pls.' Mot. at 4; Pls.' Reply at 3.)[5] The Court concludes the bad faith exception to *Younger* abstention does not apply.

## IV. CONCLUSION

For the reasons set forth above, Kihagi's motion to lift the stay is DENIED.

IT IS SO ORDERED.

Dated: October 3, 2016

_____
KANDIS A. WESTMORE
United States Magistrate Judge

---

approval before serving legal notices on tenants. (Nong Dec., Exh. 20 at 2.)

[5] In her motion, Kihagi had also argued that the Court can lift the stay because she is only seeking monetary damages for her § 1983 claims. (Pls.' Mot. at 9-10.) In support, Kihagi cites to *Bullock v. Town of Woodside* for the proposition that the Ninth Circuit has "not approved of *Younger* abstention in an action for money damages under § 1983 when . . . the ongoing state proceeding was not a criminal prosecution." 2000 WL 734513, at *1 (9th Cir. June 7, 2000). As the City pointed out, *Bullock* is contrary to published Ninth Circuit precedent, which has found that "*Younger* principles apply to a claim for damages based on constitutional challenges which can be asserted in pending state proceedings that implicate important state interests, and that the correct disposition is to defer—not to dismiss—when damages are at issue." *Gilbertson v. Albright*, 381 F.3d 965, 982 (9th Cir. 2004). Kihagi appears to no longer rely on this argument in her reply papers, and argues that the Court should no longer abstain because of "the intensified harassment of Plaintiff" since it entered the stay. (Pls.' Reply at 5.) As discussed above, however, the Court does not find evidence of bad faith or harassment.