UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANNA KIHAGI, et al.,<br><br>    Plaintiffs,<br><br>v.<br><br>CITY OF SAN FRANCISCO, CALIFORNIA, et al.,<br><br>    Defendants. | Case No. 15-cv-01168-KAW<br><br>**ORDER DISMISSING CASE WITH PREJUDICE**<br><br>Re: Dkt. Nos. 106, 110 |

On March 12, 2015, Plaintiffs Anna Kihagi, Xelan Prop 1, LLC, Renka Prop, LLC, and Zoriall LLC (collectively, "Kihagi") filed the instant suit, asserting that Defendants' enforcement of building, property maintenance, construction, and other ordinances with respect to Kihagi's properties violated their constitutional rights. (Compl. ¶1, Dkt. No. 1.) On June 4, 2015, Defendant City and County of San Francisco ("City") filed a lawsuit against Kihagi in the Superior Court for the County of San Francisco, alleging that Kihagi had, "[i]n defiance of numerous state and local laws protecting these tenants and capping rents, [been waging] a war of harassment, intimidation, and retaliation using unlawful, unfair and fraudulent practices . . . ." (Defs.' Req. for Judicial Not. ("RJN"), Exh. A ("State Compl.") at 1, Dkt. No. 107.)

Pending before the Court are: (1) Defendants' motion to dismiss the complaint with prejudice, and (2) Kihagi's motion to voluntarily dismiss the case without prejudice, pursuant to Federal Rule of Civil Procedure 41(a)(2). (Defs.' Mot. to Dismiss, Dkt. No. 106; Pls.' Mot. to Dismiss, Dkt. No. 110.) Having considered the parties' filings, the relevant legal authority, and the arguments made at the November 21, 2019 hearing, the Court GRANTS Defendants' motion to dismiss with prejudice and DENIES Kihagi's motion to dismiss without prejudice.

# I. BACKGROUND

Kihagi is the owner of residential rental units in San Francisco. (First Amended Compl. ("FAC") ¶ 1, Dkt. No. 18.) Kihagi alleges that Defendants arbitrarily brought enforcement actions against Plaintiffs based on race discrimination and "bureaucratic hostility towards landlords' right to evict tenants who are breaking their leasing contracts." (FAC ¶ 4.)

Kihagi alleges that in 2014, she noticed tenants were illegally subletting their rent controlled units at market rates. (FAC ¶¶ 35-37.) Kihagi sought to evict the tenants, who then complained to the City. (FAC ¶¶ 38-39.) Kihagi alleges that the City then "initiated a full-fledged attack on Kihagi vis-à-vis the City's handling of applications for construction and remodeling permits and virtually anything else that required City approval . . . ." (FAC ¶ 40.) This included an April 2014 permit to demolish an illegal unit, a September 2014 permit at 1135 Guerrero, and a January 2015 permit at 1137 Guerrero Street. (FAC ¶¶ 41-44, 72-73.)

The City then allegedly began to perform illegal and improper inspections in retribution for Kihagi's actions with respect to its tenants. (FAC ¶ 45.) This included a March 4, 2015 inspection, which Kihagi alleges was illegal. (FAC ¶¶ 50-64.) Kihagi further alleges that "she is the only person with property i[n] good condition which has been raided by a Task Force," and that none of the properties have the "uninhabitable conditions [that would] warrant attention by the Task Force." (FAC ¶ 65.) Kihagi also alleges that the City issued a false Code Enforcement Violation in February 2015 with respect to the Filbert property, despite Kihagi having valid permits. (FAC ¶¶ 68-70.) Kihagi further asserts that the Code Enforcement Violation was the result of a discriminatory enforcement action. (FAC ¶ 68.)

On June 4, 2015, after Kihagi filed the instant federal action, the City brought an enforcement action against Kihagi. (*See* State Compl. at 1.) The City alleged that Kihagi had engaged in unlawful "business practices to systematically displace and recover possession of rent-controlled units in violation of state and federal law," including harassing and intimidating tenants, reducing services, and refusing to timely and properly perform repairs. (State Compl. ¶ 8.) Further, once the tenants have left, Kihagi would "quickly renovate the units, in many cases without first obtaining the proper City permits and attendant inspections . . . ." (State Compl. ¶ 8.)

On June 30, 2015, Defendants filed a motion to stay the federal action. (Dkt. No. 19.) The Court subsequently granted the motion, based on *Younger* abstention, to permit the state action to proceed. (Dkt. No. 43 at 6-7.)

While the federal action was stayed, the state case proceeded. Due to Kihagi's failure to comply with their discovery obligations, numerous evidentiary sanctions were issued, including prohibiting Kihagi from testifying at trial. (Defs.' RJN, Exh. B ("Statement of Decision") ¶¶ 62-69.) On May 23, 2017, following a trial, the state court issued a 151-page Statement of Decision, which found, amongst other things:

(1) Kihagi illegally evicted tenants. (Statement of Decision ¶¶ 164, 220, 253, 268, 363.)
(2) The City did not arbitrarily deny construction and building permits, and Kihagi failed to obtain permits. (Statement of Decision ¶¶ 387-90, 394-95, 399-437.)
(3) The City lawfully inspected or attempted to inspect Kihagi's properties. (Statement of Decision ¶¶ 454-62.)
(4) The City lawfully issued citations for building code violations. (Statement of Decision ¶¶ 388, 452-53.)
(5) Kihagi's properties were not in good condition, and warranted inspection. (Statement of Decision ¶¶ 219, 313, 430, 452, 472.)
(6) The March 4, 2015 inspection was lawful, and Kihagi prevented the City from performing these lawful inspections. (Statement of Decision ¶¶ 454-62.)
(7) The Filbert Street Enforcement Violation was proper and Kihagi failed to obtain the necessary permits. (Statement of Decision ¶¶ 399-409.)

The state court imposed over $2.7 million in penalties against Kihagi. (Statement of Decision ¶ 515.) On December 3, 2018, the California Court of Appeal affirmed the state court decision, including the forfeiture of Kihagi's testimony. (Defs.' RJN, Exh. C (Appellate Decision) at 1, 14.)

On January 8, 2019, Kihagi's counsel moved to withdraw. (Dkt. Nos. 84-87.) On February 27, 2019, the Court granted the motions to withdraw. (Dkt. No. 97 at 1.) The Court also issued an order for Plaintiffs to show cause why the case should not be dismissed when the state

action and its appeal had been resolved in favor of the City. (*Id.* at 4.) The Court specifically raised "res judicata and other principles of claim preclusion." (*Id.*)

On April 29, 2019, Kihagi's new counsel filed a response to the order to show cause, asserting that Kihagi intended "to amend the pleadings to capture facts that occurred since the City's lawsuit was filed in 2015." (Dkt. No. 100 at 2.) Kihagi also argued that res judicata did not apply because there were different claims, and that issue preclusion did not apply because "none of the issues or elements of Ms. Kihagi's federal causes of actions was actually litigated or adjudicated in the state court action." (*Id.* at 3-5.) The Court discharged the order to show cause and set a case management conference. (Dkt. No. 101.)

On July 2, 2019, the Court held a case management conference, setting a hearing date of October 3, 2019 for Defendants' proposed motion to dismiss. (Dkt. No. 105.) On August 29, 2019 – the last day Defendants could file a motion to dismiss in compliance with the Civil Local Rules – Defendants filed their motion to dismiss. Defendants also requested monetary sanctions for filing the motion. (Defs.' Mot. to Dismiss at 12.)

Kihagi's opposition was due on September 12, 2019. Instead of filing an opposition, Kihagi filed a "Notice of Voluntary Dismissal of Entire Action Without Prejudice," requesting a court order for dismissal per Federal Rule of Civil Procedure 41(a)(2). (Pls.' Mot. to Dismiss at 2.)

On September 17, 2019, the Court issued an order, stating that it was "not inclined to grant Plaintiffs' request for dismissal without prejudice. The claim and issue preclusion issues have been raised since at least February 2019, yet Plaintiffs waited until *after* Defendants expended the resources necessary to file the motion to dismiss to file for dismissal." (*Id.*) The Court ordered Kihagi to file supplemental briefing explaining why the case should not be dismissed with prejudice, and why Kihagi should not be required to pay Defendants' attorney's fees for filing the motion to dismiss. (*Id.*)

On September 26, 2019, Kihagi filed a supplemental brief. (Pls.' Supp., Dkt. No. 113.) With respect to attorney's fees, Kihagi argued that their counsel had "attempted to reach a resolution with [Defendants' counsel] before Defendants filed their motion to dismiss," including

4

initiating discussions and attempts at follow up phone calls. (*Id.* at 6.) Thus, "[t]here was simply no need for Defendants' [sic] to file this motion before counsel had a chance to have at least one conversation about possible alternatives to a motion." (*Id.*) Kihagi attached an August 9, 2019 e-mail from their counsel to Defendants' counsel, asking for a time to discuss the case and next steps. (Benjamin Decl., Exh. D, Dkt. No. 113-1.) Defendants' counsel responded that same day, asking what Kihagi's counsel wanted to discuss and giving a time to speak. Kihagi's counsel replied at 10:47 a.m. that he had questions regarding Defendants' compulsory counterclaims argument, and stated: "I'd like to reach agreement on how we proceed before a motion is filed." (*Id.*)

On October 3, 2019, Defendants filed their supplemental brief. (Defs.' Supp., Dkt. No. 114.) Defendants' counsel provided a declaration, which stated that she had sent several e-mails and letters to Kihagi's counsel in April through June 2019 regarding the preclusion issue. (Baumgartner Decl. ¶¶ 5-10.) With respect to the August 9, 2019 e-mails, Defendants' counsel provided an additional e-mail showing her 11:36 a.m. response, stating: "When would you like to talk? The sooner the better if our discussion may not require I file a motion." (Baumgartner Decl., Exh. F.) On August 20, 2019, she e-mailed Plaintiff again, stating: "I left you a message; I'm off to court but will be back this afternoon. Is there a good time to call you?" (*Id.*) Defendants' counsel stated that she "did not hear back from [Kihagi's counsel] before the Court's deadline to file a motion." (Baumgartner Decl. ¶ 12.) She received no communication until September 12, 2019, the date Kihagi's opposition was due, when Kihagi's counsel asked for a stipulation of dismissal without prejudice. (Baumgartner Decl. ¶ 13, Exh. G.)

## II. DISCUSSION

### A. Request for Judicial Notice

A district court may take judicial notice of facts not subject to reasonable dispute that are "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b); *United States v. Bernal-Obeso*, 989 F.2d 331, 333 (9th Cir. 1993). A court may, therefore, take judicial notice of matters of public record. *United States v. Wilson*, 631 F.2d 118, 119 (9th Cir. 1980).

Here, Defendants request judicial notice of court filings and rulings. The Court takes judicial notice of these documents because judicial notice may be taken of court records. *See* Fed. R. Evid. 201(b)(2); *Wilson*, 631 F.2d at 119.

**B. Dismissal**

The parties do not dispute that dismissal of the case is proper, as Kihagi has filed a request for dismissal under Federal Rule of Civil Procedure 41(a)(2). Per Rule 41(a)(2), "an action may be dismissed at the plaintiff's request only by court order, on terms that the court considers proper." Thus, at issue is whether dismissal with or without prejudice is warranted.

The Court finds that dismissal with prejudice is warranted because Kihagi's claims are barred by res judicata. The concept of res judicata – that is, the preclusive effect of a judgment – encompasses both issue preclusion and claim preclusion. *Taylor v. Sturgell*, 553 U.S. 880, 892 (2008). "Under the doctrine of claim preclusion, a final judgment forecloses successive litigation of the very same claim, whether or not relitigation of the claim raises the same issues as the earlier suit . . . . Issue preclusion, in contrast, bars successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination essential to the prior judgment, even if the issue recurs in the context of a different claim." *Id.* (internal citations omitted).

Here, although the federal and state action raise different claims, they are incontrovertibly based on the same *facts*, namely the legality of Kihagi's eviction of tenants, the City's inspections and citations, and the City's refusal to issue permits. Indeed, Kihagi's complained of actions are *directly* addressed by the state court. For example, Kihagi alleges that a March 4, 2015 inspection was illegal, and that the City had no right to inspect any part of the property. (FAC ¶¶ 50-57.) The state court specifically found that these inspections were lawful, and that Kihagi had in fact attempted to impede the lawful inspections. (Statement of Decision ¶¶ 454-62.) Likewise, Kihagi alleges that she was targeted for discriminatory enforcement action based on a Code Enforcement Violation at the Filbert property in February 2015, when she in fact had proper permits. (FAC ¶¶ 68-71.) The state court, however, found that the notice of violation for work "without permit" was proper, and that Kihagi's actions constituted a violation of the Unfair Competition Law. (Statement of Decision ¶¶ 405-406.) Further, to the extent Kihagi alleges she was arbitrarily

6

inspected when "[a]ll of [Kihagi]'s properties are in extremely good condition," the state court found that "several of [Kihagi]'s buildings were at various times between 2014 and the present, in a condition which substantially endangered the health and safety of residents . . . ." (Statement of Decision ¶ 452; *see also id.* ¶ 472 ("the Court finds that [Kihagi] allowed serious conditions to worsen and persist and then used those very conditions as an excuse to try to evict elderly or disabled, long term low rent tenants. Numerous violations consisted of unacceptable health and safety violations that jeopardized tenants' well being.") With respect to the legality of the evictions, the state court found that the City had proved Kihagi's "repeated harassment and fraudulent evictions of multiple tenants in multiple buildings," and noted that "the record is replete with outrageous, unlawful and fraudulent violations that were specifically targeted against often long term tenants who were protected by San Francisco's rent control laws." (Statement of Decision ¶ 363.) In short, Kihagi's constitutional claims are premised on facts and allegations that the state court has already decided against Plaintiffs. To permit Kihagi to bring the constitutional claims would thus require re-litigating (and potentially rejecting) these findings.

In the supplemental brief, Kihagi does not specifically dispute these findings or identify **any** specific facts or claims that have not already been decided against them. Instead, Kihagi appears to argue that they were not given the opportunity to litigate the federal claims because Kihagi was not allowed to present any evidence relating to the federal claims. (Pls.' Supp. at 4-5.) Kihagi, however, did in fact have the *opportunity* to litigate these facts before the state court; Kihagi forfeited that opportunity by refusing to participate in discovery, resulting in the imposition of numerous evidentiary sanctions. To find that Kihagi did not have the opportunity to litigate her federal claims now would be to reward her conduct before the state court. Additionally, even if Kihagi did make arguments related to the specific federal claims, including whether there was discrimination, this does not change the fact that the parties did litigate the factual underpinnings of the federal claims. Thus, Kihagi would still be bound by the state court's findings on those facts. Kihagi does not explain how, for example, they could argue that Defendants arbitrarily investigated the properties that were all in "extremely good condition" when the state court has already found that the buildings were in fact not in good condition, but had health and safety

7

violations that jeopardized tenant safety. (*See* FAC ¶ 65; Statement of Decision ¶¶ 452, 472.)

Accordingly, the Court finds that Kihagi's claims are issue precluded, and thus dismissal with prejudice is warranted. To the extent, however, that Kihagi desires to bring a claim that she was the subject of discriminatory enforcement *vis-à-vis* other landlords who committed similar extensive violations, such claims may not be precluded. In contrast, here, Kihagi brings constitutional claims premised on the allegation that Defendants investigated their properties or issued notices of violation despite Kihagi's properties being in good condition, and/or as punishment for Kihagi lawfully responding to tenant disputes. (*E.g.*, FAC ¶ 3, 4, 65.) Again, because such claims are based on facts already decided against her, the instant suit must be dismissed with prejudice.

### C. Attorney's Fees

Defendants request the award of attorney's fees under Federal Rule of Civil Procedure Rule 11 and 28 U.S.C. § 1927. (Defs.' Mot. to Dismiss at 12.) Rule 11(b) states that "[b]y presenting to the court a pleading, written motion, or other finding . . . an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed under an inquiry reasonable under the circumstances: (1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation . . . ." Section 1927 states: "Any attorney . . . who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." A finding of bad faith is not required; "recklessness suffices for § 1927." *Fink v. Gomez*, 239 F.3d 989, 993 (9th Cir. 2001).

The Court declines to award sanctions. In so ruling, the Court finds that this was an especially close call. There is evidence that Kihagi's actions have been taken in bad faith, with the effect of needlessly increasing the cost of litigation. For example, the res judicata issue has been raised since at least February 2019 by both Defendants and the Court. (*See* Dkt. No. 97.) After Kihagi's counsel appeared, Defendants repeatedly raised the res judicata issue in an attempt to resolve the case without having to file the motion to dismiss. Kihagi's counsel, however, refused

1 to dismiss the case, before abruptly filing a motion for voluntary dismissal the day the opposition
2 to Defendants' motion to dismiss was due.

Additionally, Kihagi's counsel represented to the Court that he "attempted to reach a resolution with [Defendants' counsel] before Defendants filed their motion to dismiss." From the record before the court, it appears Kihagi's counsel initiated a conversation with Defendants' counsel on August 9, 2019, but that when Defendants' counsel responded with times to talk, Kihagi's counsel failed to respond. Defendants' counsel sent a follow-up e-mail on August 20, 2019, requesting to talk, but received no response until September 12, 2019, the day Defendants' opposition to the motion to dismiss was due. It was only then – *after* Defendants had filed their motion to dismiss – that Kihagi sought to dismiss the case without prejudice.

At the hearing, Kihagi's only explanation for waiting until after the motion to dismiss was filed was because counsel were not able to speak before then, and counsel had been waiting for client approval. Kihagi could not explain why their counsel did not respond to Defendants' counsel between August 9, 2019 and September 12, 2019. The failure to act sooner, when Kihagi had long been on notice of the res judicata issues, further evidences bad faith and an attempt to increase Defendants' costs of litigation. As the Court is dismissing the case with prejudice, however, the Court declines to award sanctions.

### III.  CONCLUSION

For the reasons stated above, the Court GRANTS Defendants' motion and DISMISSES the case with prejudice. The Court DENIES Defendants' request for monetary sanctions.

IT IS SO ORDERED.

Dated: November 22, 2019

_____
KANDIS A. WESTMORE
United States Magistrate Judge